All right, sir, let's hear from you in this final case here. Good morning, Your Honors. May it please the Court. My name is Luis Carlos Diaz, and I am representing the appellant Madiagne Diop during this petition for review, pro bono publico. We are asking this Court to remand Appellant's case to the Immigration Court to allow Appellant to develop the record as it relates to his mental health, pursuant to matter of MAM. We are not asking this Court to issue a sweeping decision. Rather, it is Appellant's contention that the failure of the immigration judge to issue an order granting administrative closure to allow a mental health assessment violated his procedural due process rights in removal proceedings of fundamental fairness. The appellant presents three separate issues before this honorable court, all relating to what rights an individual has during removal proceedings. The B.I. holding in matter of MAM is a recognition of the agency to protect and provide safeguards for vulnerable individuals in removal proceedings. Specifically, petitioners asking the immigration is asking this court to recognize that the immigration judge erred in applying the procedures and safeguards set forth in matter of MAM. The first question we present before this honorable court is whether the immigration court violated petitioner's procedural due process rights in failing to order a psychological evaluation of petitioner despite clear indicia of incompetency in the record and petitioner's oral testimony. And we would request that this court look at the record, at the hearing specifically. And the biggest concern that I believe the immigration judge should have identified is the firing and rehiring of the judge throughout removal of the prior counsel during the removal proceedings. In addition, what I think matter of MAM invokes the court to do is to seek an independent analysis as to the mental health of an individual in removal proceedings. The problem that I think is brought to light in petitioner's case is that prior counsel had created a record that essentially said that this was an isolated incident to demonstrate to the court that he was a person of good moral character and that he was a person of good moral character. And that required some sort of discretionary relief. So where is there any indication in the record that it wasn't an isolated incident? Your Honor, we submitted to the BIA a mental assessment that was performed upon petitioner immediately after the incident. The incident being January 2012? Correct, the arrest that led to the third degree assault. And then the hearing on his mental competence was almost a year later, November 2012. So that's your best evidence that a year later he was still incompetent? No, I believe our best evidence is that in matter of MAM, the board recognizes that mental health is fluid. And whether during the time of the competency hearing, petitioner was able to present to the court that he was competent, which we question that he did based on the colloquy that occurred between the immigration judge and petitioner, that the immigration judge is simply not in a position to assess how fluid and how his mental health may vary. Part of what matter of MAM seeks to protect is that mental health can range in a variety of ways. And obviously matter of MAM acknowledges that things like headaches or things like bad memory are not things that are sought to be protected. But it does specifically mention that acute symptoms... Are you familiar with the Supreme Court case of Thompson v. Cohan? Not specifically, Your Honor. Pardon me? No, Your Honor. Because on page 16 of your opponent's brief, they indicate that in Thompson they said that competency is a factual determination. Do you take issue with the statement in the opposing brief that competency is a factual determination? Not specifically, no. I agree that it is a factual determination. And I understand that the immigration judge has given significant deference in that regard. So why wouldn't the trial judge have a better view on this than we do? In other words, standards of review are determined by institutional advantages. In other words, who has the better perspective on it, the trial court or the appellate court? And these questions of competency so often bottom out on credibility. And you just... It's hard to determine on appeal whether somebody's faking it or whether they're not. But a trial judge is in a much better position to make that credibility determination because they listen to the individual involved. And you can tell from the... much more than from a dry transcript. You can tell from a hearing and actually having the person there before you testify whether the person can understand the proceedings. So, I mean... It seemed to me that the institutional advantages of a trial court perspective would have a... would play a role here. I agree to the extent that the immigration judge is in a better position than an appellate court to review what the competency of the petitioner is. Our position is that given what matter of MAM recommends as the safeguards and the guidelines that an immigration judge should use in assessing a petitioner or a respondent's mental health, it requires more than just a, sir, do you have mental health problems? And in this specific case, the petitioner said no. And this is a petitioner that had an episodic episode that resulted in a blackout that resulted in an 11 count indictment. And he's saying no. And she questions it. Her response to that exchange is no question mark, okay. And that's in the joint appendix at page 143. So, given that, I mean, our position isn't that the immigration judge isn't in the best position to assess or in an appropriate position to assess the mental health of an individual. It's when these red flags come up where, you know, the respondent consistently fires and rehires his attorney, where the questioning during removal proceedings is, sir, have you had previous episodes of mental health outbreaks? And he says no. Sir, do you understand the purpose of these proceedings? It's about immigration, right? This is not an individual that is showing a lucid kind of understanding of what is going on with the court. You're saying that he sort of rushed through the proceedings, but the point is being made that the proceedings here were continued on maybe four or five occasions for client consultation, examination of competency, allowance of prosecutorial discretion, and she didn't just, the immigration judge didn't just make a determination from a cold medical record. She asked the petitioner to come before her, and if this is erroneous, we move a little bit in the direction of, because you see, this is a fast-track removal proceeding, and there's a tremendous incentive to delay, delay, delay, delay. One way you delay is by maintaining lack of competency, sometimes correctly, sometimes not. But it can't be that one has a right to competency examinations in fast-track removal proceedings as a matter of right. So you get down to the question of whether the immigration judge just rammed it through. She gave a number of continuances. She brought the petitioner forward, and as I read the medical record, the psychotic episode, as Judge Thacker alluded to, was a year before the hearing, and I didn't see anything in the interval that would have caused red flags. And, of course, competency is determined not on the basis necessarily of past events, although they may be relevant, but it's determined as of the date of the competency hearing. And there are many people who may have been incompetent in the past, but at the time of the competency hearing, may be competent. So given the medical record, given the competency hearing, and given the credibility that's a component of these judgments, why wouldn't we defer to the advantages of the trial court perspective? That's the trouble I'm having. Your Honor, I think the response is that the immigration court simply isn't an independent licensed psychologist or a psychiatrist to really assess a person in removal proceedings' mental competence. Now, with respect to the continuances leading up to the competency hearing, those continuances weren't a result of Mr. Deop claiming that he was incompetent. Those were simply continuances because he was detained and because he was having trouble physically communicating with his attorney. What I think is lacking in the immigration judge's assessment, and I think would have been better served through an independent process, is to determine whether a respondent is able to communicate to his counsel. And I think given the problems that respondent was having in terms of if he even wanted his previous counsel to represent him, that was a situation that wasn't fully fleshed out. And that is part of the reason why petitioner is now seeking to develop this record at the immigration court, because it's not clear that he's really communicating with counsel and that the immigration judge really made an assessment other than, are you able to talk to your attorney? Yes. I hope that was a continuance granted in order to provide time for counsel to find communication. Correct. And I think that was the result of the phone line connection and not really the communication and really understanding what the purpose of the removal proceedings and what potential relief he would have. Now, with respect to the injury, because I do want to address this point, because the government does raise it, as to whether the mental health evaluation would have resulted in a withholding of removal case going forward. That's only part of petitioner's contention. I mean, the real injury that we identify is that it was unclear if removal proceedings should have gone forward if he had sought an independent evaluation. And I'd like to refer the court to page 482 of matter of MAM, where they give this list of other either BIA decisions or circuit court decisions in which the immigration judges, or even in criminal cases, have stopped these proceedings to allow an independent counsel. I mean, you see in the ninth court decision in Ni Hao Wong, counsel was accompanied by a state court-appointed conservator who testified fully at his behalf. In matter of H, a 1954 BIA decision 6, INN decision 358, by an attorney who was able to introduce evidence and cross-examine witnesses, a doctor testified regarding his medical condition, and the respondent appeared to testify intelligently and rationally. I mean, the common theme in all the cases that matter of MAM cites are that there are these independent evaluators that really allow a full assessment. And it's not to say that, you know, in situations where it is very clear that a person is competent enough to go forward, that the immigration judge can't make that determination, but this is not that case. Not with, you know, the criminal arrest that occurred, not with the consistent firing of his attorney, and not with, you know, the clear lack of understanding that Mr. Diop demonstrated during the removal proceedings. So if the purpose of matter of MAM is to protect and to provide safeguards for the mentally incompetent, then, you know, a rubber stamp by the immigration judge saying, okay, I've talked to him enough to determine that he's okay to go is not enough. I understand what you're saying. The flip side of it is that sometimes people are faking it, and they're instructed almost one way or another to demonstrate confusion, to give confused responses, and the like. Now, you know, I don't know whether this is that. I just think the immigration judge is, you know, I've said that. The immigration judge has a person in front of him, and I can't tell from a transcript, but I think an immigration judge could. I think I could tell if a person was in front of me, whether that person was coherent and able to understand proceedings or not. I think the medical record indicated a larger number of red flags were more recent episodes. It might be a different time. You have some rebuttal time. Your Honor, may I respond? I see that my time is up, but I may respond to the point that the Court has just made. Your Honor, I completely understand the Court's concern that there are certain individuals that may use this to their advantage. And in Petitioner's specific case, and given his fragile mental state, I think the record and the way that he was not necessarily coached by his previous attorney was to show that he wasn't a person with mental health problems because he deserved this discretionary relief from the Court. Everything he had been told up to that point was, you know, we have to show that this was an isolated incident. We have to show that you're not a person with bad mental health problems. And somebody with mental health problems, this is the exact reason why independent assessments are necessary, because the counsel has an obligation and a duty to zealously represent that client and seek the interest of Petitioner. I mean, that interest can vary depending on what juncture we are at the removal proceedings. And for the immigration judge just to say, well, you seem competent enough, I don't believe that's what matter of MAM represents. Thank you. Thank you. Good morning. May it please the Court. My name is Aaron Nelson. I represent the Attorney General, the respondent. Following up on counsel's last point, if we have in this case a situation where an individual is clearly mentally incompetent, when counsel took over the case after the immigration judge made her decision, there was a mechanism by which he, they could have asked for, they could have filed a motion to remand or a motion to reopen, having conducted their own mental health evaluation. And that would be a situation where new evidence has come to light, or as counsel said, mental health, one's mental health state is fluid. What medical records were submitted here in addition to the year-old psychotic episode? I mean, were there medical records that were submitted? At which juncture, Your Honor? Before the hearing or in preparation for the hearing? Well, the last hearing when prior counsel asked for continuous or administrative closure to await congressional action on an immigration bill, which surprisingly didn't happen, not surprisingly, she attached medical records there, which took the long-term view, which were over several months. And those medical records showed that, as counsel said, Several months, what time period? After January? After January, after January 3 and 6 and 9 months later, in which the community health workers, in which psychiatrists and social workers in the records said that by all accounts, this person has no history of mental health. He says so himself. He's not under, he's not taking medication. This was an isolated incident. He attaches a declaration. Now, counsel would like to say that, well, previous counsel was shading it. Well, he comes close to saying that counsel was making, was forcing improper statements because at the April 23, 2013 request for a continuance, the documents that prior counsel submitted to say, these are my bona fides for special consideration under this prospective legislation, they included a statement from counsel which said, nothing like this ever happened to me before. I've been working, I was working two jobs. Severe lack of sleep caused this. Nothing has happened to me since. I'm fine. It also included affidavits from individuals, friends, perhaps relatives, definitely friends in the community who said, I've known this guy for 10 years because he is a visa overstay for more than 15 years. I've known this guy for 10 years. This is out of character with him. In fact, one individual said, he now lives with me and he picks up my kids from school. He takes care of them. He does things around the house. This was the bulk of the documentation when the last request for relief in April of 2013, all said that the long-term view is that this person is not a person with any competency issues. And I would add that, I would emphasize, as we said in our brief, that counsel for petitioner, who appealed to the board, submitted selective medical records from right after the January 2012 incident. And of course, I mean, if we had a situation where there was a removal proceedings days after that, and we had an immigration judge who, in the face of those medical records, said, I find you competent, we might have an issue of whether competency. But then I would say, I would sort of jump to our last point, which is, where is the prejudice? If there, you know, I would, and precursor to that, I would say matter of MEM is instructive. Matter of MEM has sort of a three tiers. The first is whether they're indicia of incompetency. The second is an assessment. And the third is a safeguard. Now, counsel for petitioner goes right to the safeguard. They didn't apply the safeguard. Well, they don't have to. And the, although it was brief, the December 2012 mental evaluation by the immigration judge got to exactly what it needed to. Do you understand, do you have a factual and rational basis of what's going on here? And do you know the nature and object of these proceedings? And he said, yes. And in that, the time previous to that, which triggered the stand-alone evaluation, the immigration judge asked petitioner's counsel, is there anything that you've noticed that should trigger competency questions? And she said, nothing that I've seen, although the reason that we are here is because of this incident in January of 2012. So they said, we'll take a pause. We'll have a stand-alone hearing. But nothing after that, and petitioner's been represented all the way through, nothing after that suggests that this was anything but an isolated incident, that the immigration judge was improper in her finding of competency. And I will come back to what I said previously, which is there's no, where's the prejudice? Prior counsel was asked, February 7th, 2013, you're asking for, when the immigration judge said you're asking for a continuance for prosecutorial discretion, do you envision any other form of relief? And she said, I don't believe he's eligible for any form of relief. Well, these things all bottom out on their facts. One of the things you don't want is somebody just rushing it through, you know. And this is a fast-track proceeding, I realize, but it doesn't mean, you know, the train still has to go at a reasonable rate of speed. And there were a number of continuances granted here. There was a hearing granted here. And the question is, I guess, is the medical record and the personal testimonials and everything taken in their totality indicate that the immigration judge got it wrong? But it's heavily factual and credibility-driven, isn't it? Absolutely. And that goes to a substantial evidence, you know, a substantial evidence review. And I would say, on this record, not only at the time that the competency hearing was held, but anything after that, nothing suggests that this court should overrule that finding that he was competent. Nonetheless, and additionally, I would say that there's no prejudice here because he's never showed that he was eligible for any kind of relief. And if he was eligible for this sort of amorphous, nascent withholding claim that Petitioner tacks on in his appeal to the board, he had a way of raising that. He could have filed a proper motion to reopen or motion to remand. He could have attached to that a hearing from a psychologist or psychiatrist. It's not the immigration judge's, it's not within her purview to be that. And he could have filed a I-589 application, showed prima facie eligibility. He didn't do any of that. So I would say on this record, there simply is nothing that this court should overturn and the petition should be denied. I'm happy to answer any questions you might have. Thank you. Good morning, Your Honors. With respect to the motion to remand that the government has alluded to, the BIA practice manual essentially says that when new evidence is introduced through an appeal, it should be treated as a motion to remand. Now, the January 2012 medical assessment that we included in the BIA appeal shed light on this mental health problem that, as is explained in matter of MAM, can be fluid and can change from time to time and can really depend on the day that the individual is presented before the court for the competency hearing. And I would just caution in that our position is that the prior counsel was forcing improper statements from the petitioner. I would just say that because mental health can vary from time to time, from day to day, from week to week, that in some evaluations, it could very well be that he's doing better than in other days. And we've identified the one medical record that wasn't submitted to the immigration court that suggests that he had a flat affect, that he didn't really apprise what he had done. I think the exact language was that he minimizes symptoms and withholds information, which is exactly what would be the problem through a questionnaire with the judge and the petitioner during removal proceedings. With respect to the prejudice that the government suggests is lacking, there is prejudice in that the, under matter of MAM, an immigration judge can administratively close or terminate proceedings or, at the very least, continue them pending medical treatment and mental health treatment. And I would just conclude and reinforce the opinion, our position that what I think today has shed light on is that we really need an independent analysis of petitioner's mental health. And that's why we're seeking a remand to the immigration court to really develop the record on that issue. Are there no further questions? Thank you very much. Thank you.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Stephanie D. Thacker